IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CIVIL ACTION |
| *for the use and benefit of* | : | |
| U.S. GLASS, INC. and | : | |
| XLE METALS, INC., | : | |
| Plaintiffs, | : | |
| | : | |
| V. | : | |
| | : | |
| RONALD DUANE PATTERSON, et al., | : | NO. 12-2634 |
| Defendants | : | |

## MEMORANDUM

**L. Felipe Restrepo, J.**                                                              **December 11, 2013**

U.S. Glass & Metals, Inc. ("U.S. Glass") and XLE Metals, Inc. ("XLE") (collectively "Plaintiffs") were both engaged as subcontractors in the renovation of a Veterans Administration Medical Center in Philadelphia, and allegedly were not paid for work they performed.  They brought suit against the general contractor, Aeroplate Corp. ("Aeroplate"), claiming breach of contract; and against Aeroplate's alleged sureties, Ronald D. Patterson ("Patterson") and Redi-Corp. of Central California d/b/a/ Redi-Bilt ("Redi-Bilt"), seeking to recover on the payment bond pursuant to the Miller Act, 40 U.S.C. § 3131 *et seq.*

Aeroplate has since settled with both plaintiffs and consented to a judgment against it. Pending before the Court is Plaintiffs' joint motion for summary judgment on their remaining Miller Act claims.  In addition, the Court will construe the Defendants' "Memorandum in Support of Jury Trial" (ECF Doc. 43) to include a cross-motion for summary judgment in favor of Redi-Bilt only.  The Court will grant summary judgment for Redi-Bilt, grant summary judgment in favor of XLE on its claim against Patterson, and defer ruling on U.S. Glass' claim against Patterson.

1

## I.   BACKGROUND

"The Miller Act requires every contractor on a federal government contract exceeding $100,000 to provide '[a] payment bond with a surety . . . for the protection of all persons supplying labor and material in carrying out the work provided for in the contract.'"  *U.S. ex rel. E & H Steel Corp. v. C. Pyramid Enterprises, Inc.*, 509 F.3d 184, 186 (3d Cir. 2007) (quoting 40 U.S.C. § 3131(b)(2)); *see also Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 264 (1999) ("[R]ecognizing that sovereign immunity left subcontractors and suppliers without a remedy against the Government when the general contractor became insolvent, Congress enacted the Miller Act.").  Any supplier or subcontractor who "has not been paid in full within 90 days" for labor performed or supplies furnished "may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due."  40 U.S.C. § 3133(b)(1).

Aeroplate contracted with the federal government to undertake the renovation of the Veterans Administration Medical Center in Philadelphia ("VAMC") (contract number VA244–C–1453).  As required by the Miller Act, Aeroplate provided a payment bond, which the parties agree is in the amount of $8,876,146 and signed by Ronald D. Patterson as surety.  *See* Doc. 31-2, p. 14; Doc. 1, p. 14.  Aeroplate then sub-contracted with U.S. Glass and XLE, both Pennsylvania corporations, for labor and materials.  *See* Compl., Doc. 1, ¶¶1-10; XLE Contract, Doc. 31-2, p. 10; U.S. Glass Contract, Doc. 31-2, p. 25.

In May of 2012, U.S. Glass and XLE brought suit against Aeroplate, Patterson and Redi-Bilt, alleging that Aeroplate had not paid for labor and supplies that it had accepted, and that more than ninety days had elapsed.  *See* Compl., Doc. 1.  The Complaint included breach-of-contract claims against Aeroplate, *see id.* ¶¶ 53-81, and Miller Act claims against Patterson and

2

Redi-Bilt for recovery on the bond, *see id.* ¶¶ 18-52.  This suit is one of several that subcontractors on the VAMC project have filed against Aeroplate.  *See, e.g.*, *U.S. ex rel. ESCO Elec. Supply Co. v. Aeroplate Corp.*, 2013 WL 4763843 (E.D. Pa. Sept. 5, 2013) (granting summary judgment to subcontractor plaintiff); *U.S. ex rel. Constr. Hardware, Inc. v. Patterson*, 2013 WL 5356851 (E.D. Pa. Sept. 24, 2013) (*inter alia*, declining to enter default judgment for subcontractor plaintiff).  Aeroplate, meanwhile, has filed suit against the Department of Veterans Affairs in the Federal Court of Claims, alleging that it has not received the payment that it is due from the government.  *See Aeroplate Corp. v. United States*, 112 Fed. Cl. 88 (Fed. Cl., Aug. 1, 2013).[1]

This case was set for trial on November 22, 2013.  On that date, Aeroplate settled with both Plaintiffs.  The parties subsequently submitted a proposed Order of Judgment memorializing the terms of the settlement, which the Court signed.  Plaintiffs' Miller Act claims against Patterson and Redi-Bilt remained live, and Plaintiffs' joint motion for summary judgment remained outstanding.  Pursuant to this Court's Order entered November 22 (Doc. 38), the parties filed supplemental materials addressing the effect of the judgment against Aeroplate on the remaining claims.

Specifically, Plaintiffs filed a supplemental motion for summary judgment and supporting memorandum (Doc. 42).  Patterson and Redi-Bilt answered via a "Memorandum in Support of Jury Trial," which the Court will construe as a response and cross-motion for summary judgment in favor of Redi-Bilt.  *See* Doc. 43, p. 2 ("There are no documents or evidence that Redi-Bilt is a surety and summary judgment should be granted for Redi-[B]ilt.").

---

[1] That case is ongoing.  The Federal Court of Claims has denied motions to intervene by U.S. Glass and XLE, *see id.*, and by a bank that loaned Aeroplate money to finance the project, *see Aeroplate Corp. v. United States*, 111 Fed. Cl. 298 (Fed. Cl., July 7, 2013).

The Plaintiffs then moved to strike this document from the record (Doc. 45).  In view of the condensed briefing schedule, the Court will deny that motion.  To the extent that Plaintiffs' motion to strike advances substantive arguments, the Court will construe it as a reply.

Pending before the Court, then, are Plaintiffs' motion for summary judgment on their remaining Miller Act claims against Patterson and Redi-Bilt, and Redi-Bilt's cross-motion for summary judgment in its favor.

## II.  JURISDICTION AND STANDARD OF REVIEW

This Court has federal subject-matter jurisdiction pursuant to U.S. Const. Art. III §2, 28 U.S.C. § 1345 and 28 U.S.C. § 1331.  In ruling on a motion for summary judgment, the Court must "construe the evidence in the light most favorable" to the non-moving party, *Zimmerman v. Norfolk S. Corp.*, 706 F.3d 170, 176 (3d Cir. 2013), and grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  F.R.C.P. 56(a).  "A 'genuine dispute' exists if a reasonable jury could find for the nonmoving party."  *Zimmerman*, 706 F.3d at 176.

## III.  DISCUSSION

### A.  Claims against Redi-Bilt

Redi-Bilt has moved for summary judgment on Plaintiffs' claims against it.  *See* Doc. 43. The Court will grant the motion.  The Miller Act provides subcontractors with a right of action to "bring a civil action on the payment bond."  40 U.S.C.A. § 3133.  In this case, Redi-Bilt is not listed as a surety on the payment bond, but rather as the "Employer" of the individual surety, Ronald D. Patterson.  Doc. 31-2, p. 16 (as Exh. to Compl., Doc. 1, p. 16).  Ronald D. Patterson is quite clearly the only listed surety, and he is an "individual" rather than a corporate surety.  *Id.* p. 16.  In order for Redi-Bilt to have enlisted as a corporate surety, or for Patterson to have acted as

its agent, Redi-Bilt and Patterson would have had to comply with instructions specific to corporate sureties. *See id.* p. 15. They did not. There is a space on the payment bond for "Corporate Surety(ies)"; it is blank. *Id.* p. 14. Redi-Bilt is simply not included as a surety on the bond.

Plaintiffs argue that Redi-Bilt must be deemed a surety on the basis of the allegation in their Complaint, which Defendants' Answer did not clearly contest. *See* Doc. 45-2, p. 3. A non-moving party, however, "cannot establish a genuine dispute as to a material fact by pointing to unsupported allegations in the pleadings." *Doe v. Luzerne Cnty.*, 660 F.3d 169, 175 (3d Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). Plaintiffs also allege that the assets pledged by Patterson to secure the bond actually belong to Redi-Bilt, *see* Doc. 31, p. 3, ¶ 12, but the record contains no evidence to that effect. Even if Patterson pledged assets he does not own, this would not render Redi-Bilt a surety, whether or not it would entitle Plaintiffs to recover against those assets (or bring separate claims against any of the entities involved).

Because it is clear that Redi-Bilt is not listed as a surety on the payment bond, the Court will enter summary judgment for Redi-Bilt on the Miller Act claims.

### B.  Claims against Patterson:  Effect of the Judgment against Aeroplate

Plaintiffs' claims against Patterson are more complex. Both Plaintiffs and Patterson argue that the judgment entered against Aeroplate (by virtue of its settlement of the contract claims) resolves the Miller Act claims against Patterson. They argue for opposite resolutions. Neither is correct.

Patterson argues, first, that the judgment against Aeroplate releases him from liability on the payment bond. He has provided no supporting law. The two cases that he cites, *Mamalis v. Atlas Van Lines, Inc.*, 528 A.2d 198 (Pa. Super. 1987), and *Filler v. Comm'w Fed. Savings*, 531

A.2d 1167 (Pa. Commw. Ct. 1987), relate to Pennsylvania law governing vicarious liability and joint-tortfeasor liability, respectively, and are inapposite.  The language of the Miller Act and of the payment bond, rather, controls:  The Act empowers any subcontractor "that has not been paid" to bring a civil action on the bond "for the amount unpaid at the time the civil action is brought."  40 U.S.C. § 31311(b)(1).  The payment bond itself binds Patterson, "jointly and severally," "for payment of the penal sum," an obligation that becomes void only if the Principal makes the "payment" that is due.  Doc. 1, p. 14.  The entry of a judgment against Aeroplate does not constitute payment to Plaintiffs, and so does not relieve Patterson of his obligation.

Plaintiffs argue, in turn, that the consent judgment against Aeroplate requires a judgment against Patterson because it constituted an "admission of the amount owed," Doc. 42, p. 4, ¶ 13; and a "judgment on the merits," Doc. 42-1, p. 2, ¶ 3.  It is neither of those things.  This Court entered a consent judgment that ratified the settlement agreement between Aeroplate and the Plaintiffs.  It did not represent the adjudication of any substantive issue, does not bind entities other than the parties to the agreement, and does not have issue-preclusive effect.  *See, e.g.*, *Arizona v. California*, 530 U.S. 392, 414 (2000) ("[C]onsent judgments ordinarily support claim preclusion but not issue preclusion.") (citation omitted); Rest. (Second) of Judgments § 27, p. 250 & cmt. e (1982) (issue preclusion applies only "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment," and "[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.").[2]  *Cf.* Rest. (First) of

---

[2] Plaintiffs suggest that claim preclusion bars Patterson's defenses to liability, *see* Doc. 42-1, ¶3, but they are mistaken.  "Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the *very same claim*."  *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (internal quotation marks and citation omitted) (emphasis added).  As Plaintiffs themselves are at pains to establish, *see* Doc. 45-2, p.4, their Miller Act claims against Patterson are distinct from, and independent of, their contract claims against Aeroplate.  Claim preclusion is thus inapplicable.

Security § 139 (1941) (providing that judgment "obtained by default or confession against the principal" by a creditor is "evidence only of the fact of its rendition" in a subsequent suit against the surety, not evidence of liability).

In sum, the consent judgment entered against Aeroplate neither extinguishes nor vindicates Plaintiffs' distinct Miller Act claims against Patterson.  The Court will therefore consider whether either Plaintiff is entitled to summary judgment on the merits of its claim.

### C.  XLE's Claim against Patterson

To prevail on a Miller Act claim against a surety, a subcontractor must prove that

(1) the materials were supplied in prosecution of the work provided for in the contract;
(2) he has not been paid;
(3) he had a good faith belief that the materials were intended for the specified work; and
(4) the jurisdictional requisites were met.

*U.S. for Use & Benefit of Martin Steel Constructors, Inc. v. Avanti Constructors, Inc.*, 750 F.2d 759, 761 (9th Cir. 1984).

As evidence of the above, XLE has provided its contract with Aeroplate, a series of invoices and change orders, its "Proof of Claim – Surety Bond Claim Form" submitted on the payment bond, and an affidavit by its president, Francis X. Scanlon.  *See* Doc. 31 (Plaintiffs' Motion for Summary Judgment), Doc. 31-2 (Exhibits).  The evidence demonstrates that XLE did supply labor and materials for the VAMC project, was not paid, and has met the jurisdictional criteria.  Patterson does not contest these facts.  *See* Doc. 37 (Answer), Doc. 43 (construed as Response to Plaintiffs' supplemental motion).  Nor does he contest the value of the work performed or amount invoiced by XLE.  Rather, he argues that XLE was never entitled to payment because its subcontract provides for payment only "45 days" from the date that all work to be performed by XLE is "finished," and XLE never completed its work.  Doc. 37, p. 1-2.

7

The argument is contrary to the evidence.  The XLE subcontract, as modified by a handwritten amendment, clearly requires the contractor to "pay the SUBCONTRACTOR upon the submission of periodic estimates, 30 days from XLE's invoice."  Doc. 31-2, p. 14, ¶7.  (A separate modification to this paragraph concerning "retainage" contains the language that Patterson cites.  *Id.*)  The interpretation of an unambiguous contract is a matter of law, *see, e.g.*, *Tamarind Resort Associates v. Gov't of Virgin Islands*, 138 F.3d 107, 110 (3d Cir. 1998); *Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 483 (Pa. 2009),[3] and this subcontract unambiguously required Aeroplate to pay XLE thirty days after each invoice.  Given that there is no genuine dispute as to the terms of the contract, and that Patterson does not contest any element of XLE's Miller Act claim, there is no basis for a reasonable jury to find in favor of Patterson, and XLE is entitled to judgment as a matter of law.

### D.  U.S. Glass' Claim against Patterson

U.S. Glass submitted evidence similar to XLE's:  Its contract with Aeroplate, an AIA (American Institute of Architects) form detailing the work completed, its "Proof of Claim – Surety Bond Claim Form" submitted on the payment bond, and an affidavit by its president, Eileen Loftus.  *See* Doc. 31 (Plaintiffs' Motion for Summary Judgment), Doc. 31-2 (Exhibits). As with XLE, the evidence submitted by U.S. Glass establishes the elements of a Miller Act claim (provision of supplies and labor, non-payment, jurisdictional criteria), and Patterson does not contest those facts at all.

---

[3] The XLE subcontract has both a forum-selection and a choice-of-law provision selecting California as forum and California's substantive law to govern contract disputes.  *See* Doc. 31-2, p. 17, ¶ 20, 23.  It appears that these provisions either resulted from mutual mistake or have been mutually waived.  In any case, California contract law would produce the same result.  *See, e.g.*, *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648, 73 P.3d 1205, 1213 (2003) (explaining that interpretation of unambiguous contracts is a matter of law).

Rather, as with XLE, Patterson raises the contractual defense that U.S. Glass is not entitled to payment – in this case, because the U.S. Glass subcontract includes a "pay-when-paid" provision.  Section 7 of the U.S. Glass subcontract reads as follows:

> The CONTRACTOR agrees to pay the SUBCONTRACTOR upon the submission of periodic estimates, within fifteen (15) days of the date the CONTRACTOR is paid by the OWNER, or such period required by the CONTRACT DOCUMENTS, for work performed by the SUBCONTRACTOR on behalf of the CONTRACTOR.

Doc. 31-2, p. 28.  Patterson appears to contend that Aeroplate was never paid by the Owner (the Department of Veterans Affairs) for the work performed by U.S. Glass, so that Aeroplate has no obligation to pay U.S. Glass, and therefore that its surety does not either.  *See* Docs. 37, 43.

This argument raises two questions.  The first is a threshold question of law:  Is a contractual "pay-when-paid" clause a defense to a Miller Act claim at all?  The Ninth and Fifth Circuits have held that it is not.  *See U.S. for Use & Benefit of Walton Tech., Inc. v. Weststar Eng'g, Inc.*, 290 F.3d 1199, 1208 (9th Cir. 2002) (holding that unsatisfied "pay-when-and-if-paid" clause in subcontract does not constitute defense for Miller Act surety unless it includes a "clear and explicit" waiver of subcontractor's Miller Act rights); *United States ex rel. T.M.S. Mech. Contractors, Inc. v. Millers Mutual Fire Ins. Co. of Tex.*, 942 F.2d 946, 949 n. 6 (5th Cir. 1991) (holding that "pay-when-paid" clause in subcontract does not bar subcontractor's action against a Miller Act surety).  *See also U.S. ex rel. Acoustical Concepts, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 635 F. Supp. 2d 434, 440-41 (E.D. Va. 2009) ("It is well settled that sureties may not rely on subcontract terms affecting the timing of a subcontractor's recovery for providing labor and materials that conflict with the Miller Act's purpose of ensuring prompt payment to subcontractors on federal construction projects."); Steven J. Koprince, *The Slow Erosion of Suretyship Principles: An Uncertain Future for "Pay-When-Paid" and "Pay-If-Paid"*

*Clauses in Public Construction Subcontracts*, 38 Pub. Cont. L.J. 47, 56 (2008) (noting that "[a]t least five federal courts have considered whether a Miller Act surety can enforce a conditional payment clause," and have all concluded that it may not).

Because there is no Third Circuit precedent on point and the parties have not had the opportunity to address this question, the Court will defer its ruling pending supplemental briefing by the parties.

Secondly, presuming for the moment that Patterson may raise the pay-when-paid provision as a defense, there arises a question of fact:  Did the government pay Aeroplate for the work performed by U.S. Glass?  The Loftus affidavit asserts that it did:

> 11. Personnel at Aeroplate advised that it had received payment from the government for U.S. Glass' invoices, but had used the money to pay other contractors with older invoices and change orders.  Aeroplate was issued a check from the Veterans' Administration in January 2012 for such change orders, but Aeroplate did not pay U.S. Glass, despite the representations of their employees that Aeroplate would pay U.S. Glass.

Doc. 31-2, p. 60.  These hearsay statements, likely inadmissible at trial on the claim against Patterson, do not merit substantial weight for purposes of summary judgment.  *See* Fed.R.Civ.P. 56(c)(4) ("An affidavit . . . used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated").  On the other hand, while Patterson has broadly denied that Aeroplate received full payment from the government, *see* Doc. 6, p. 2, ¶ 12 and p. 5, ¶61; Doc. 37, p. 1-2, he has not produced any evidence to show that payment was withheld (let alone for specific invoices).  In lieu of ruling on whether there exists a genuine dispute as to whether Aeroplate received payment for the U.S. Glass invoices, the Court will request the parties to address this issue in supplemental briefing as well.

**IV.**    **CONCLUSION**

For the foregoing reasons, the Court will grant summary judgment in favor of Redi-Bilt on the Plaintiffs' claims against it; grant summary judgment in favor of XLE on its claim against Patterson; and defer ruling on U.S. Glass' claim against Patterson pending supplemental briefing, which the parties shall submit in accordance with the accompanying Order.